We now turn to the third case for the morning, United States v. Crosby, 23-2155 and 23-2156. Counsel for Appellant, if you would make your appearance and proceed. Good morning. May it please the Court, Tiffany Walters for the United States. With the Court's permission, I'd like to reserve three minutes for rebuttal. Mr. Crosby was caught with child pornography when the FBI executed a search warrant at his home. His collection and devices were seized, and he was other than honorably discharged from the Air Force as a result of his conduct. But Mr. Crosby was undeterred. When he was eventually arrested in Pennsylvania on his first federal charge, he was found in possession of new devices with new images, resulting in a new charge in the Western District of Pennsylvania, which was eventually transferred to the District of New Mexico. The 337 images and the 212 videos that Mr. Crosby possessed were horrific. They involved not just borderline images of older teens. They included deeply disturbing images of sadistic sexual abuse perpetrated against very young children, including, for example, a video with a vaginal penetration of a three-year-old by an adult man. These images were not just nameless faces on the Internet. These were real children suffering real abuse and who now continue to suffer from the knowledge that images of their abuse are still passed around and viewed over and over again by countless strangers for their own pleasure. As punishment, That's powerful stuff, Ms. Walters, but place it within the framework of the legal issue that we have to decide, which is what was substantively unreasonable about what the district court did here. And in that connection, as it relates to your brief, at least my recollection was a reference to that he, well, which he, I think, admitted that he had been doing this for a number of years, 10, maybe something like that. Well, what I would ask you is, is that factual universe, is that relevant even in the sentencing context? I mean, it's not relevant conduct for what he did now, right? No, but it is relevant as an offender characteristic. It's part of his history. It's part of the nature of his offense. And he's arguing in many ways that, you know, he had served in the Air Force. He's, you know, has these other achievements. And what it's showing is that this is not an aberration. This is not a one time criminal mistake. This is a pattern of conduct that's gone on for 10 years. And then on top of that, he's caught once with the FBI, with images in his home, and suffers significant consequences, and yet he's undeterred. So the original discussion of victim statements, I think those are directly relevant to the seriousness of the offense. And that goes to 3553A2A, which is retribution, as this court was just discussing. It goes to what's just punishment for this offense. OK, and that's a different factor than I think the chief was just asking. Oh, I'm sorry. But OK, so just punishment, retribution. You rely on the fact that five days is simply unreasonably unreasonable substantively in terms of adequate punishment for this crime. Correct. It goes also to general deterrence, which is an A2C. And that's because this conveys a message. It conveys a message that you can be caught not once but twice, convicted of two counts of possession on different occasions, and still only merit a five day time served sentence. That doesn't convey to the victims that their harm is significant, that it matters, and it doesn't convey to would-be perpetrators that this is a crime that has significant consequences. With regard to general deterrence, I read, and maybe I read it incorrectly, that you claim that the court never even mentions general deterrence. I do believe it's mentioned in that initial, the court at the very beginning goes through all the factors. And I do believe it's listed there. Our argument would be that the court has given it no weight in practice. It's not a consideration. We're not arguing, I mean, we agree that the district court's decision reflects that it considered the factors. And clearly the court was wrestling with this. But at the end of the day, the Senate itself has to reflect and comply with Congress' mandate that it reflect the 3553A2 factors. And there's just no room for general deterrence. And to your point about weight, I mean, that in fact was what Cookson was getting at in terms of whether there was an adequate explanation of the weight that was accorded to the other factors other than A1, right? Correct. And Cookson was very concerned with the adequacy of the explanation in this case. The district court here really has given no weight to general deterrence. Perhaps its comment that treatment works, incarceration does not, could be read to go to that. That's the closest. But that conclusion is really one that this court rejected in Walker, which is to say that general deterrence is a factor that Congress has had that courts have to consider. And even if it just disagrees with that as the effectiveness of longer sentence and generally deterring, Congress has required the court to do so. And so it must put its skepticism aside, as the court said in Walker. What about the court's reliance on its disagreement with the guidelines policy overall? Correct. How does that come into our analysis here? Well, in Cookson, this court recognized that some degree of disagreement with the sentence enhancements in 2G 2.2 could be reasonable. And that might support a downward variance in this case to some degree. But the difficulty is that that policy disagreement is really about the enhancements. It's about saying that, you know, everyone uses computers. Everyone possesses these sorts of terrible images. And so these enhancements don't reflect increased criminal conduct. But it doesn't address whether or not the base offense level is incorrect. I believe even without any of those enhancements, his sentencing guideline range would have been 18 to 24 months. And none of those policy disagreements explain why the court would believe that a nominal sentence is appropriate in a case like this. The guidelines got it totally wrong. And the court did not explain that, right? But it didn't explain why it would go below what would be the base offense level if the adjustments were taken off the table. It didn't explain that in reference to the guidelines. What its explanation appears to focus on is really Mr. Cosby's characteristics. Specifically, Dr. Joy's evaluation where she notes his recently diagnosed autism and his depression. And that seems to be what the district court explained as the basis for its variance. But even if the court were to provide weight to that, and perhaps that would warrant some degree of variance, it can't give no weight to retribution. It can't give no weight to general deterrence. And Dr. Joy's evaluation simply doesn't speak to either of those factors at all. And what about sentencing disparities? What's your view of how the court dealt with the possibility of this creating sentencing disparities? The court mentioned sentencing disparities in opening, but doesn't really delve into that. I believe the briefing below, the defendant had argued that it would avoid unwarranted sentencing similarities with more serious offenders, sort of along the lines of the enhancement argument. But I think looking at the actual disparities in this court's sentences in similar cases shows that this sentence, in fact, creates sentencing disparities. But as I read it, there was no attempt to compare with other cases with similar charges and sentences. No, there was none. Mostly it was just focusing on Mr. Crosby's characteristics themselves. So his compliance working on supervised release, his military service, and his diagnosis, that was really the focus of the court's attention, in addition to the disagreement with the policy guidelines and this general sense that incarceration just doesn't work. You also challenged the court's consideration of incapacitation. If you look at the conditions of his supervised release, it looks to me like there's quite significant limitations on his ability to use personal devices, and that he's going to be heavily surveilled. It's a long duration of supervised release. Can you explain to me why that's not enough for incapacitation? Sure. And it's been recently reduced to 10 years. As far as incapacitation, some of those factors absolutely do go to incapacitation. We would agree that the monitoring of his computer and the limitations on technology, those sort of things, do go to incapacitation. I think our argument was largely in response to the defendant's argument as to location monitoring, and that's really just not effective at incapacitating for this type of crime because he can offend from his own bedroom. The location is really not relevant. And on incapacitation, though, isn't there a distinction with the difference of whether we're talking about someone being incarcerated or whether somebody has got all of these conditions on supervised release? I mean, incapacitation also contemplates the notion of removing them from society, does it not? Correct. Certainly he would not be able to reoffend if he was incarcerated because he wouldn't have access to these at all. These conditions help prevent him from reoffending, but they can't be absolute. I mean, if he violates the conditions of a supervised release, he can still reoffend. So it's an imperfect response to incapacitation, but it absolutely does reflect incapacitation to some degree. Really, the core of the problem here is that there's no general deterrence and there's no retribution. There's no just punishment. There's no recognition of the need to promote respect for the law where an individual violates the law, has those devices seized, and then goes out and violates them again. It's a next level of disrespect to the law, and that should have been met with significant punishment. And instead, the punishment is nominal. Or at least a better explanation of why five days is enough. That certainly could have helped. Our position is that no explanation on these facts would have rendered this sentence reasonable. But certainly, more explanation is always helpful. More explanation is more helpful, and it's also a remedy that is more likely to be given by this court. Is it not? Correct. Okay. And we're not asking that the court dictate what sentence would be appropriate in this case. We're only asking the court to review this sentence on these facts in front of it, and to say that under these circumstances, it simply doesn't reflect the harm that was inflicted on the victims, the gravity of the crime, and it doesn't deter anyone from committing these sorts of crimes. I see I'm down to two and a half minutes. If there are no further questions, I'll reserve the rest of my time for rebuttal. That's fine. Thank you. Good morning, Your Honors, Counsel. My name is Amanda Skinner, and I'm here on behalf of Mr. Crosby. The sentence imposed in this case was legally available and well-supported by the district court over the course of two sentencing hearings. The record reflects that the district court selected the sentence after thoughtful consideration of every 3553A factor and was not manifestly unreasonable, arbitrary, capricious, or whimsical in the reasoning given. Where does the record support that the court adequately considered general deterrence? Thank you, Your Honor. With respect to deterrence, the district court was looking at how do, you know, part of deterrence is how do we protect, we're trying to deter people because we want to protect the public. So I heard you earlier, Judge McHugh, when you talked about overlap between the factors. The district court imposed location monitoring in this case, which the government routinely issues press releases explaining sentences in all sorts of cases. Someone could hear, I could get location monitoring if I have a federal offense. I could be put on supervised release. And location monitoring is going to instill fear in people? Is that what you're telling me? It's an added restriction on people's liberty, and I would take issue with the government's comment that if you were incarcerated, you couldn't access these materials. Individuals in prison that I represented have possessed CSAM materials, guns, cell phones, money, drugs. The point is they're removed from society, and the opportunity for them to do so supposedly is limited. On the general deterrence point, the issue, part of this relates to what Cookson describes, is the need to adequately explain the weight that's associated with the factors. The fact that you identify monitoring as a factor that could implicate general deterrence, I don't see any indication that the court wrapped monitoring around general deterrence in its explanation of what it did. Is there anywhere where you can point me where it did do that? Maybe not specifically, Your Honor, but I would point the court to the fact that the district court does not even need to reference every single factor. And whether we're talking about a substantial upward variance or a substantial downward variance, if this court's analysis is the same. That doesn't get us there, because Cookson made very clear that, no, these factors don't have to have equal weight, but the court must consider them. And if it's going to do a significant downward variance, it needs to explain what weight it accorded to various factors. And the problem, no, it doesn't have to reference every factor, but if there are significant factors that are implicated by the facts of the case, it needs to speak to them. And if it doesn't speak to them, the question becomes, why don't you have the same problem that existed in Cookson? Because I don't see that it speaks to a number of these things, including general deterrence and retribution. So with respect to the need to afford adequate deterrence to criminal conduct, this is another situation where facts overlap to support different factors. I'm talking about explanation. I'm not talking about whether the facts overlap. Counsel can come in here and make an argument that the facts overlap. That doesn't tell us that the court actually accorded weight to retribution or to general deterrence in deciding its sentence and balancing this with the nature and circumstances of the defendant. That's what our law requires. We need to know that this was not arbitrary. We need to know that the court gave consideration to these factors. I don't see it. So I addressed this issue in our brief because I was confused about the government's argument. It seems to be a procedural reasonableness argument, and I think Your Honor's questions get to that point. And that's what Cookson took the time to tease out and explain when it got to talking about substantive reasonableness, that no, it matters. Explanation matters in the context of substantive reasonableness because we need to know that what the court did was not whimsical, not arbitrary, not an abuse of discretion, which means that if it is going to focus on his autism and the nature and circumstances of his life, then it needs to let us know that it actually gave less weight to these other things for a reason that was not arbitrary. And I would point you to the sentencing transcript, Your Honor, of the second sentencing hearing held in this case after the district court recessed the first hearing to allow itself the opportunity to review the substantive briefing, the extensive briefing that was provided by Mr. Crosby's counsel specifically. But the government also did have a sentencing memo where they focused almost their entire argument on one 3553A factor, the nature and circumstances of the offense. The district court stated, in sum, Mr. Crosby's amenability to treatment, possibility of benefiting from specialized treatment, low risk of recidivism, and high vulnerability in prison make him a good candidate for community-based treatment. You have paragraphs of discussion by the judge to then sort of, as you said, tease out more information. And we also have the statement of reasons to support the variance that was imposed. Well, that means one of the factors that I've been puzzling over is the fact that these two cases were combined. Whereas when you look at it, and there's been no explanation by the judge or anybody that I see, had he been tried separately of each of these two offenses, the sentence would have been a mandatory 10 years. Now, to me, that needs to also be explained somewhere by the judge of recognizing the seriousness and being able to go as far down as five days in time, sir. Well, Your Honor, respectfully, I think that explanation needs to come from the government. The government agreed to consolidate. But it still needs to be explained to us. That seems to me to be a very important factor in considering all of this that's going on, because five days is a whole lot different than 10 years. This is where we get into a really clear understanding of why the district court, or even the magistrate court judges who impose the bond conditions in this case, are in the best position to evaluate Mr. Crosby in person, in the hearings. We have at least two magistrates from two different districts that signed off on bond agreements to keep him out of custody when both of these cases were filed. We have a magistrate judge in the District of New Mexico who kept him out of custody pending sentencing over the government's strenuous objection. And we have a district court judge who imposed what is, you know, we concede, a significant variance after having the opportunity to interact with Mr. Crosby and see him over the course of two sentencing hearings. Well, I think that I need to follow up on Judge Baldock's point. The reality is that he did get his. I don't understand why it is the government should be explaining. Sure, it gave him Rule 20, fine. The government has whatever reason it has for giving him that benefit, underscored benefit, but the reality is that the genesis of the crimes that led to the Rule 20 was the fact that he had been caught once, he had paid a price for that, and then he turned around and did it again. Well, there is no grappling with that by the court as it relates to just punishment and respect for the law. What respect for the law did Mr. Crosby show when he did a pivot, moved, and did the same thing? So respect for the law, and I think it came out in the earlier argument, that factor, including just punishment, respect for the law, and in some ways to your questions on deterrence, that doesn't always mean prison time. The judge's explanation about the policy agreement goes to just punishment. Oh, let's talk about that. The policy disagreement related to the adjustments, you eliminate the adjustments, he still does time. He still does significant time. The guideline range would recommend time, and so if the government concedes that under only the policy agreement, the guideline range would be as low as 18 to 24 months, and Mr. Crosby's counsel argued it would be as low as 6 to 12 months. That is one factor. The judge used his policy disagreement with the guidelines to bring that range down to either 18 to 24 months or 6 to 12 months, and then we have a voluminous record on history and characteristics. We have a restitution order. We have location monitoring and a significant term of supervised release, the term the government asked for. Let's use the word explanation again. The court did not explain why taking all of those adjustments out with the sentence that still would be incarceral, that it decided that, no, he didn't really need that. Five days' time, time served was all he needed. There was no explanation for why that made sense, and so we're left in a posture of guessing whether that was arbitrary, whether that was whimsical. We don't know, do we? Your Honor, I read that the discussion by the district court and the statement of reasons as very similar to the discussion in this court's published decision in DeRusse from 2017, and Judge Baldock, you wrote a dissent in that case that I think is instructive here. DeRusse was a kidnapping case. A 24-year-old kidnapped his ex-girlfriend at gunpoint. It later turned out to be a BB gun. He had done significant planning, bought a new cell phone, impersonated a friend, took her from her apartment building, put her in a car, and drove her for eight hours before he was stopped by police. She was terrified. She had no history of any psychological issues before this, and at that sentencing, numerous family members testified along with the victim in that case. The district court judge clearly makes you thankful not to be a district court judge or trial attorney anymore. These are very difficult decisions, and in that case, the district court imposed a sentence of time served because of previously undiagnosed mental health issues, because they underpinned and offered an explanation for how this young man found himself in this situation where these are the choices that he made. Mr. Crosby is extremely similar because he was undiagnosed for his entire life, yet a suicide attempt at 14. He had interactions with people that he didn't understand and wasn't able to make sense of. Somehow he was able to serve in the military. Maybe it's that intense structure that was helpful to him. He volunteered for two duties. This is a golden unicorn of a client. Somehow he racked up a bunch of awards when he was simultaneously violating the law. What do you do with the argument that the government makes that this isn't the situation where you can look at that part of the nature of circumstances of the defense and say, oh, well, this was an aberration. He all of a sudden, after a law-abiding life, decided to engage in this conduct. He's been engaging in this conduct all the time that he is supposedly presenting himself to the world as a patriotic service member. What do we do with that? This is where we get into reasonable range of sentences, and I would submit that the reasonable range of sentence in this case was perhaps a 10-year period of supervised release and five-day time served and somewhere close to the top end of the guideline range, maybe more. Judge Balduck, in your dissent in DeRusse, of course, this court never directs a sentence on remand, but, Judge Balduck, you discussed maybe a sentence of 70 months would have been appropriate in that case, or perhaps even 70 weeks. That's a massive range because we're acknowledging that the district court had some really specific, unique facts in front of it that informed the sentence, and just because this court or different judges in our district may have considered a different sentence, that is not enough for the government to establish that this was a whimsical or arbitrary and capricious sentence. He got five days. He didn't get 70 weeks along the lines of the DeRusse, and so the point is not really, as I see it here, the point is not really, at the end of the day, I don't care what sentence he got. What I care about is whether there is an explanation for why the court did what it did and one that reasonably accounts for other competing variables that the sentencing factors of 3553A tell us the court needs to consider. With that in mind, it does nothing to explain why it goes from the 18 months or the six months involving the guidelines down to five days. It does nothing to explain how it deals with the fact that he goes to Pennsylvania and engages in the same conduct. It does nothing with those things. Your Honor, I think that the court's explanation over the court's questions in the first hearing inform the explanation in the next hearing. The district court clearly thought about this. The judge was not originally considering a lower sentence. That's clear from the first hearing. He looked at the record, all of the information, including the report from Dr. Joy, and determined that incarceration is not what's necessary to protect the public or deter this young man. Location monitoring is necessary. In DeRusse, the judge did not even impose restitution or mandate location monitoring. And again, DeRusse, first of all, DeRusse is very different because, as the chief pointed out, you had aberrant conduct based on a severe mental health crisis. Here we have a lifetime looking at child pornography. And caught once, goes to Pennsylvania, does it again. The other significant thing is two years after DeRusse in Crookston, we gave very, very clear guidance to the sentencing court that when you have a significant variance downward, we need to know why. And we can't read your mind by saying you said one thing at the first sentencing hearing, and then you came in and did a different thing at the second hearing. So it must have been this. We need you to tell us. And I think that explanation is missing here. May I answer and wrap up, Your Honor? Thank you. First, the government waived any procedural challenge to the explanation of the sentence in this case? It's not procedural. We went out of our way to tease out how important it is, an explanation is in determining substantive reasonableness. And, Your Honor, I think there is record support. Just because this court would have reached a different conclusion, the downward departure in DeRusse is really replaced in this case with the policy disagreement by the guidelines. That is what brings the range down so low. And in DeRusse, he received a sentence of 70 days. I want to make just one final comment, because the government included facts outside the record in their briefing and mentioned it here again today. There was a violation filed in this case, and I would ask the court that if that is going to be considered, that you direct the parties to give additional briefing, because in that case he received an upward variance of the guideline range under 7B1.5, use note 4, because he received a charge bargain and a significant variance under the first sentence. It is fundamentally unfair for the government to use a low sentence to argue for an increase on a supervised release violation while this is pending. And if that is going to enter into the court's consideration in any way, I would respectfully ask that we be allowed to provide briefing on that issue. Thank you. No further questions. Counsel. Thank you, Your Honor. I'll start with the supervised release violation comment. We don't believe that this court needs to consider that. That wasn't before the district court. We referenced that only to show that the term of supervised release has been modified, and that's part of this case. But that doesn't explain what the district court did in this case, because it wasn't on the record at that point. No matter what explanation the district court provided, the sentence would not be reasonable. The defendant still hasn't identified anything that would serve the purposes of retribution. We have five days' time served, and we have $12,000 in restitution, which just amounts to $200 a month. While the defendant has referenced the terms of supervised release, we know that those cannot serve the purposes of retribution. So no matter how restrictive those terms might be, they can't serve the purpose of just punishment. As to the transfer requested from the District of Pennsylvania, the government did exercise lenience in allowing that case to be transferred, and it allowed the mandatory minimum to be taken off the table. But that being said, we have advocated below for a 78-month sentence, and the fact that we would agree that some lenience from that mandatory minimum of 10 years is warranted doesn't mean that the lenience down to a five-day sentence is substantively reasonable. Mr. Crosby has also referenced the 6-12-month guideline range that was discussed below. That is a reference to what the guideline range was in 1990, which is before the Internet existed. That is not an appropriate comparator, and there's no indication that the district court adopted that. Finally, DeRusse, as Judge McHugh, you mentioned, is very different on its facts. It involved aberrant conduct. It involved severe mental illness resulting in delusional thinking. We don't have any of those factors here. Instead, I would direct the court to Judge Baldock's thoughtful dissent in DeRusse, where Judge Baldock, you mentioned that many defendants in these sort of cases have some sort of mitigating factor that might warrant some lenience. But those factors are usually never so severe that they warrant a sentence of time served. There's no situation in which the district court's five-day time served could adequately reflect the harm that was inflicted on victims, the need for general deterrence, or the severity of this crime. And for these reasons, we'd ask the court to vacate and remand for resentencing. Thank you. Thank you to both counsel for the very fine arguments. The case is submitted.